IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DARRYL SMITH, | CASE NO. 1:21-cv-934 |
| Petitioner, | DISTRICT JUDGE JAMES G. CARR |
| vs. | |
| WARDEN DOUGLAS FENDER,[1] | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | **REPORT & RECOMMENDATION** |

Pro se Petitioner Darryl Smith filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Smith is in custody at the Mansfield Correctional Institution due to journal entries in the cases *State v. Smith*, Cuyahoga County Court of Common Pleas, Case Nos. CR-17-620144-A, CR-18-630341-A. This matter has been referred to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28

---

[1]     When Smith filed his Petition, he was housed at the Lake Erie Correctional Institution and named Warden Douglas Fender as the Respondent. Doc. 1. After he filed his Petition, Smith was moved to the Mansfield Correctional Institution. Doc. 23.

U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Eighth Appellate District did not recite the facts that gave rise to the charges against Smith. A brief synopsis, however, is required to understand the parties' arguments.[2] In the early morning hours on April 14, 2017, a fire occurred on a property owned by the Arndts. Doc. 30-2, at 156. The property contained a house with an attached garage. *Id*. Someone set the rear of the garage on fire and the fire spread to a nearby vehicle parked in the driveway and to the Arndts' home. *Id*. A passerby called 911 and a smoke alarm woke the sleeping Arndts, who escaped unharmed. *Id*. at 155, 159. Smith pleaded guilty to attempted aggravated arson and was sentenced to six years in prison. Doc. 30-1, at 14. The trial court suspended Smith's sentence, imposed two years of community control sanctions, and sent Smith to an agreed-upon substance abuse treatment facility. Doc. 30-3, at 27–38, 76–77.

About two months later, a police officer saw Smith driving with a fictitious license plate and attempted to stop him. Doc. 30-1, at 70. Smith didn't stop and led police on a high-speed chase. *Id*. at 90. It turns out that Smith had fled the treatment facility, too. *Id*. at 75. Smith was charged with failing to

---

[2]     The summary is taken from fire investigation records (Doc. 30-2, at 156) and statements made during Smith's hearings (Doc. 30-3, at 24–27, 63–92).

comply with a police officer's order to stop. Doc. 30-1, at 16. Smith pleaded guilty to that charge, which was also a probation violation. *Id*. at 24, 25. The court revoked Smith's probation and imposed Smith's original six-year sentence for attempted aggravated arson. *Id*. at 25.

### Procedural background

*Trial court proceedings in case number CR-17-620144*

In September 2017, a Cuyahoga County Grand Jury issued an indictment charging Smith with three counts of aggravated arson for a house fire that occurred on April 14, 2017. Doc. 30-1, at 4–5 (Exhibit 1, case no. CR-17-620144-A). In this report and recommendation, I'll refer to this case as the arson case. Smith was appointed counsel and pleaded not guilty. *Id*. at 6 (Exhibit 2); Doc. 30-2, at 329 (Exhibit 54). Over the next twelve days, Smith filed numerous pro se motions and notices. *See* Doc. 30-2, at 329. On October 19, the trial court held a hearing and granted Smith's request to appoint a different attorney, one whom Smith had used in an earlier criminal case. Doc. 30-1, at 7 (Exhibit 3); Doc. 30-3, at 2–7 (transcript).

In March 2018, the court held a hearing and Smith pleaded guilty to one amended count of attempted aggravated arson. Doc. 30-1, at 13 (Exhibit 6); Doc. 30-3, at 14–19. The state dismissed the remaining two counts in the indictment. Doc. 30-1, at 13. On April 30, 2018, the trial court sentenced Smith to six years in prison, to run concurrently to Smith's sentences in three other cases. Doc. 30-1, at 14 (Exhibit 7); Doc. 30-3, at 20–39. The trial court

suspended Smith's six-year sentence and ordered Smith to serve two years of community control with enumerated conditions. Doc. 30-1, at 14.

*Trial court proceedings in case number CR-18-630341*

In July 2018, a Cuyahoga County Grand Jury issued an indictment charging Smith with fleeing and failing to comply with a police officer's signal to stop. Doc. 30-1, at 16 (Exhibit 8, case no. CR-18-630341). In this report and recommendation, I'll refer to this as the failure-to-stop case. Smith was appointed counsel and pleaded not guilty. *Id*. at 17 (Exhibit 9).

Thereafter, Smith filed numerous pro se motions. *See, e.g.*, Doc. 30-2, at 336–37. The trial court granted Smith's two separate requests for different counsel. Doc. 30-1, at 18 (Exhibit 10); 19 (Exhibit 11); Doc. 30–2, at 336–37.

Meanwhile, in August 2018 in the arson case, Smith filed a pro se "motion to dismiss probation violation(s) citations and or for immediate evidentiary hearing." Doc. 30-1, at 20 (Exhibit 12). In his motion, Smith argued that his then-recent failure-to-stop case did not constitute a probation violation and asked the court to hold an evidentiary hearing or dismiss the charge in the failure-to-stop case. *Id*. at 20–21. The court denied Smith's motion in February 2019. Doc. 30-2, at 322.

In December 2018, the trial court held a hearing in the failure-to-stop case. Doc. 30-1, at 23 (Exhibit 13). Smith, through counsel, withdrew his not guilty plea and pleaded guilty to failing to comply with order or signal of police officer as charged in the indictment. *Id*.; Doc. 30-3, at 50. On January 7, 2019,

4

the trial court sentenced Smith to 30 months in prison, to run consecutively to the sentence in the arson case. Doc. 30-1, at 24 (Exhibit 14); Doc. 30-3, at 93–94. The court then found Smith to be in violation of his probation and sentenced him to serve the original six-year sentence in the arson case, for a total of eight-and-a-half years in prison. Doc. 30-1, at 25 (Exhibit 15); Doc. 30-3, at 93.

*Motion for new trial, to withdraw guilty plea, and for relief from judgment, and other motions*

On January 14, 2019, Smith filed in the trial court one pro se motion requesting a new trial, to withdraw his guilty plea, and for relief from judgment in both of his underlying criminal cases. Doc. 30-2, at 13 (Exhibit 29), 324, 334. He also filed a motion to supplement his motion with attached documents, *id.* at 23 (Exhibit 30), and various other motions, *id.* at 324. On February 26, 2019, the trial court denied Smith's motions. *Id.* at 26 (Exhibit 31), 324, 334.

*Direct Appeal*

On January 14, 2019, Smith pro se appealed the trial court's January 7, 2019 judgment entry to the Ohio court of appeals. Doc. 30-1, at 26 (Exhibit 16). The caption of Smith's notice of appeal lists the case numbers for the arson case and the failure-to-stop case. *Id.* In his brief, Smith raised the following assignments of error:

> 1. The trial court unlawfully arbitrarily revoked probation and criminally falsified court records and journal entries by denying defendant any hearing, did not cite any violation, did not assign counsel nor cite reasons for imposing 6 years prison sentence in

5

violation of all due process procedural state laws, and the Sixth and the Fourteenth Amendments of the U.S. Constitution.[3]

2. The trial court unlawfully extracted coerced guilty pleas in both cases from a deaf, beaten, actually innocent defendant without providing hearing aids nor qualified unbiased deaf translators; and inappropriately dictates his guilty pleas and answers, in violation of Criminal Rule 11-C et. al. and controlling established laws; and contrary to the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution.

3. Prosecutorial intentional misconduct aided by the court et. al. in concealing arson videos and actual innocence evidence that aquits the defendant;–and the trial court denial of a valid timely filed postconviction petition; violated criminal statutory laws, and due process (and confrontation rights) as defined in the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution and Ohio Criminal Rule 16 and controlling laws.

4. The trial court erred in not granting defendant's motion to dismiss based on no probable cause existed in case # CR18-630341 contrary to due process requirements in the Sixth and Fourteenth Amendment of the U.S. Constitution.

5. The permitted arbitrary forfeiture of defendant's truck and property by the trial court and the state with no forfeiture proceeding re: case # CR18-630341 violated Ohio statutory laws and was a denial of due process rights defined in the Sixth and Fourteenth Amendments of U.S. Constitution.

6. The trial court violated Ohio statutory law in R.C. 2967.191 by denying 281 days jail time accreditation off sentence re: case # CR17-620144 as a means to extend punishment.

---

[3]    In this report and recommendation, I've reproduced Smith's assignments of error and grounds for relief as written.

Doc. 30-1, at 31–33 (Exhibit 17). The state filed an opposition brief and Smith

filed a reply. *Id*. at 185, 201 (Exhibits 18, 19). On April 16, 2020, the Ohio court

of appeals affirmed the trial court's judgment. *Id*. at 216–26 (Exhibit 20); *State*

*v. Smith*, No. 108121, 2020 WL 1890729 (Ohio Ct. App. Apr. 16, 2020).

In June 2020, Smith filed in the Ohio Supreme Court a motion for more

time to file an appeal; a "motion to stay imposed death sentence (by Covid-19)";

and a motion "for issuance of an order to show cause." Doc. 30-1, at 227 (Exhibit

21). The Ohio Supreme Court granted Smith's request for an extension of time

to file a notice of appeal and memorandum in support of jurisdiction. *Id*. at 270

(Exhibit 22). Smith then filed a memorandum in support of jurisdiction, and

asserted the following propositions of law:

> I. A trial court must comply with Criminal Rule 11-
> C and inform a hearing impaired defendant of all of
> the maximum and mandatory consecutive sentence
> penalties; and cannot deceive a defendant to plead
> guilty by use of phony plea bargains, contrary to the
> due process clause of the Fourteenth Amendment of
> the U.S. Constitution.
>
> II. The state, prosecutors and trial court et. al.
> cannot conceal, suppress and hide exculpatory arson
> videos, innocence evidence, and reports while while
> violently coercing a beaten defendant to plead guilty
> and thereafter suppress his post conviction
> pleadings and block appeal efforts all of which is
> contrary to Criminal Rule 16 and R.C. 2921.12 and
> the Fourteenth Amendment of the U.S.
> Constitution.
>
> III. In a probation revocation action, a trial court
> must mandatorily appoint revocation counsel, must
> serve written violation charges to the defendant,

> must permit entry of a plea and to submit mitigation
> defenses  and witnesses, all pursuant to Criminal
> Rule 32.3 and the due process clause of the
> Fourteenth Amendment of the U.S. Constitution. A
> trial court can not falsify journal entries in a
> probation revocation to conceal non compliance with
> Criminal Rule 32.3. et. al.
>
> IV. The trial court, the county clerk of courts, and
> state prison officials must mandatorily accredit to
> the defendant the earned 474 days total jail time
> credit in these cases pursuant to R.C. 2967.191.

Doc. 30-1, at 272–73. Smith also filed a motion to "transmit the record, transcripts and evidence," Doc. 30-2, at 5 (Exhibit 24), and a motion for a restraining order to keep prison officials from confiscating, censoring, and withholding legal mail, *id*. at 6 (Exhibit 25). On September 15, 2020, the Ohio Supreme Court denied Smith's motions and declined to accept jurisdiction of Smith's appeal. *Id*. at 12 (Exhibit 28).

*Additional motions for a new trial and other relief*[4]

Meanwhile, in March 2019, Smith filed in the trial court for the arson case two motions for a new trial "and/or post conviction relief to vacate judgment and sentence" and stated that he was submitting evidence of actual innocence. Doc. 30-2, at 27–97 (Exhibit 32); 309–14 (Exhibit 50). Smith filed various other motions. *Id*. at 99 (Exhibit 33). In March, the trial court denied one of Smith's motions to vacate his probation violation and for a new trial. *Id*.

---

[4]     Smith frequently filed pro se motions and notices in state court. *See* Doc. 30-2, at 318–37. In this procedural history, I only discuss the filings that are relevant to Smith's grounds for relief and related arguments in Smith's Petition (Doc. 1) and Notice (Doc. 57).

at 315 (Exhibit 51). In September, the trial court denied Smith's other motion for a new trial and Smith's remaining motions. *Id*. at 99 (Exhibit 33).

In November 2019, Smith appealed to the Ohio court of appeals the trial court's September 2019 judgment entry. Doc. 30-2, at 100 (Exhibit 34). Smith's appeal lists the case numbers for the arson case and the failure-to-stop case. *Id*. The Ohio court of appeals sua sponte dismissed Smith's appeal. *Id*. at 102 (Exhibit 35).

*Post-conviction petition*

In June 2021, Smith filed under Ohio Revised Code § 2953.21 in the trial court a post-conviction petition and a motion to vacate his guilty pleas and listed the case numbers in the arson case and the failure-to-stop case. Doc. 30-2, at 103 (Exhibit 36). That month, the trial court denied Smith's petition for post-conviction relief on the docket in both cases. *Id*. at 260 (Exhibit 37, case 17-620144), 261 (Exhibit 38, case 18-630341).

In April 2022, Smith filed in the Ohio court of appeals a notice of appeal and motion for delayed appeal. *See State of Ohio v. Darryl Smith*, CA-22-111472 (filed 4/29/2022).[5] The Ohio court of appeals accepted Smith's late

---

[5]     When the Warden filed his Return of Writ in February 2022, Smith had not appealed. *See* Doc. 30-2, at 318 (trial court docket entry stating "notice of appeal not filed"). But a review of the Ohio court of appeals' docket shows that in April 2022, Smith filed an appeal and motion for delayed appeal. *See State of Ohio v. Darryl Smith*, CA-22-111472 (filed 4/29/2022) https://cpdocket.cp.cuyahogacounty.us/COA_CaseInformation_Docket.aspx?q=B6m8gFT-0adXb3yCNcPAQQ2 (last visited Aug. 23, 2023). This Court can take judicial notice of the proceedings in the Ohio state courts. *See Lynch v. Leis*, 382 F.3d 642, 648 (6th Cir. 2004) (courts may take judicial notice of state

appeal. *Id.* (filed 5/18/2022). On February 16, 2023, the Ohio court of appeals affirmed the trial court's ruling, explaining that Smith's claims were barred by the doctrine of res judicata. *Id.* (filed 2/16/2023); *State v. Smith*, No. 111472, 2023 WL 2029000 (Ohio Ct. App. Feb. 16, 2023).

*Federal habeas corpus petition*

In April 2021, Smith filed a federal habeas corpus petition under 28 U.S.C. § 2254.[6] Doc. 1. He raised the following grounds for relief:

> **Ground one**: The state suppressed and concealed material evidence and videos of actual innocence, a violently coerced guilty plea and procedurally impeded appeals.
>
> *Supporting facts*: The state, prosecutors and trial judges concealed, hid and suppressed actual innocence material evidence, exculpatory witnesses and arson videos proving petitioner innocent while police beat petitioner and the state violently coerced a hearing impaired petitioner to plead guilty and did thereafter suppress and procedurally block his pro se post conviction pleadings and appeal efforts; all of which is contrary to the due process clause of the 14th Amendment, of the U.S. Constitution, Criminal Rule 16 and state laws. see; Exhibits; 3–14 innocence evidence and police evidence of arson videos see; Exhibits; 19–26, 33 coerced guilty pleas by beatings and torture claims legally exhausted pursuant to laws in Exhibits; 48, w/41, 44, 45.

---

court records available online to the public) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

[6]    A petition is deemed filed when a petitioner places it the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988). Smith states that he placed his Petition in the prison mailing system on April 26, 2021. Doc. 1, at 15.

**Ground two**: Trial court failed to comply with Criminal Rule 11-C and did not inform Petitioner of mandatory maximum penalties and reneged on plea agreement.

*Supporting facts*: The trial court did not comply with procedure requirements of Ohio Criminal Rule 11-C and deceived a hearing impaired beaten Petitioner of all mandatory and maximum sentence penalties that he would receive upon pleading guilty; and induced his guilty plea with promised phony plea agreements (the court reneged on) contrary to the due process clause of the Fourteenth Amendment of the U.S. Constitution, see transcript portions in Exhibit; 33 (pages #14, 41,42, 50, 57).

**Ground three**: Trial court arbitrarily revoked probation, denied all of the petitioner's revocation procedure rights and falsified records and journal entries to deny petitioner a revocation hearing.

*Supporting facts*: The trial court arbitrarily revoked Petitioner's probation by denying to him all mandatory procedure rights, did not appoint counsel, did not issue any infraction charges, no plea was entered nor taken, no hearing was conducted and the judge falsified court records (conceded by the court all in violating the due process clause of the Fourteenth Amendment of the U.S. Constitution. (see evidence in Exhibits; 35–41, and 33).

Doc. 1, at 5–8. The Warden filed a Return of Writ, Doc. 30, and Smith filed a

Notice in lieu of a traverse, Doc. 57.[7]

---

[7]     In his Notice, Smith states that he doesn't have the Return of Writ and, even if he did, he "still could never get [a traverse] mailed safely" because the prison mailroom guards would "seize … and destroy it." Doc. 57, at 1–2. The Court stated that it "will give the 'Notice' consideration only insofar as it may be responsive to Respondent's Return of Writ." Doc. 58, at 2. I have considered the arguments in Smith's Notice that are responsive to the Return of Writ.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims "must 'fairly present' [the] claim[s] in each appropriate state court (including a state supreme court with powers of discretionary review)," as a predicate to raising them in a federal habeas petition. *Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999). And a

habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent

13

and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848); *see Woolbright*, 791 F.3d at 631 ("When a petitioner has failed to fairly present … claims to the state courts and no state remedy remains, [the] claims are considered to be procedurally defaulted."). While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as

14

determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted *contrary to*, or *unreasonably applied*, Supreme Court precedent or clearly established

federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an *unreasonable application* of law, the court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*1. Ground one is procedurally defaulted*

In Ground one, Smith challenges his guilty plea to attempted aggravated arson in case number 17-620144.[8] Doc. 1, at 5–6. He alleges that

---

[8] Smith doesn't cite case number 17-620144 in his description of Ground one, but he does refer to "arson videos." Doc. 1, at 5. In his Return of Writ, the Warden provided his interpretation of the precise challenges that Smith raises

the state "suppressed and concealed material evidence" and videos showing actual innocence, coerced his guilty plea, and "procedurally impeded appeals." *Id.* at 5.

To the extent that Ground one could be construed as Smith challenging his guilty plea based on facts in the record, it is procedurally defaulted. This is so because "Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal." *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001)) (citing *State v. Lentz*, 639 N.E.2d 784, 785 (Ohio 1994)). Smith didn't directly appeal his March 2018 guilty plea, *see* Doc. 30-2, at 324–25, as the Ohio court of appeals observed, *see State v. Smith*, No. 108121, 2020 WL 1890729, at *1, 3 (Ohio Ct. App. April 16, 2020) ("Smith did not file a direct appeal in [the arson case] …. We note that Smith's December 3, 2018 guilty plea is the only plea Smith appealed in this case. Smith did not appeal from his March 29, 2018 guilty plea, and that plea is not before us for review"). *See also State v. Russell*, No. 09 MA 156, 2011 WL 861910, at *3 (Ohio Ct. App. Mar. 9, 2011) ("Appellant is before us now on an appeal of his conviction for a probation violation that occurred more than two years after his original conviction and sentence was imposed …. Appellant's failure to file an appeal of his [original] conviction bars

---

in each of his grounds for relief. Doc. 30, at 20. The Warden advised that if Smith disagreed with the Warden's interpretation, he should "promptly advise the Court and counsel." *Id*. Smith has not advised the Court that he disagrees with the Warden's interpretation of his grounds for relief. I agree with the Warden's interpretation of Smith's grounds.

him, on the basis of res judicata, from challenging any issues that could have been raised on direct appeal.") (citing *State v. Davis*, 894 N.E.2d 1221, 1223 (Ohio 2008) ("[I]ssues that could have been raised on direct appeal and were not are res judicata and not subject to review in subsequent proceedings")).

Smith did file a motion to withdraw his guilty plea in the arson case, but he procedurally defaulted his claim via that avenue, too. The trial court denied Smith's January 14, 2019 motion to withdraw guilty plea on February 26, 2019. Doc. 30-2, at 26, 322, 324. Smith appealed the trial court's ruling, Doc. 30-2, at 321, but the Ohio court of appeals dismissed his appeal under Ohio Appellate Rule 4(A) as untimely, *id.* at 317, 320–21 (explaining that Smith's appeal was due in 30 days but that Smith filed it more than 45 days later). When the Ohio court of appeals dismissed Smith's appeal, it applied a procedural bar. *See* Ohio App. R. 4(A); *Smith v. Konteh*, No. 3:04-cv-7456, 2007 WL 171978, at *3 (N.D. Ohio Jan. 18, 2007). And Smith didn't appeal to the Ohio Supreme Court the Ohio court of appeals' ruling, so he procedurally defaulted in that sense, too. *See O'Sullivan*, 526 U.S. at 845 (a petitioner must present a claim to the state appellate court and the state supreme court).

Smith also alleges in Ground one that the state "suppressed and concealed material evidence" and videos. Doc. 1, at 5. Smith included those allegations in his June 2021 post-conviction petition filed under Ohio Revised Code § 2953.21 "and i.e. motion to vacate guilty pleas (Criminal Rule 32.1)." Doc. 30-2, at 103, 117–19. The trial court denied Smith's petition. Doc. 30-2, at

18

260. The Ohio court of appeals affirmed, finding that Smith's claims were barred by res judicata because they had already been considered and rejected by the state courts in prior orders. *See Smith*, No. 111472, 2023 WL 2029000, at *3–4. Smith had 45 days to appeal, *see* Ohio S. Ct. Prac. R. 7.01(A)(1), but a review of the Ohio Supreme Court's docket doesn't show an appeal.[9]

This means that for two reasons Smith procedurally defaulted any claim that he raised in his post-conviction petition. First, the Ohio court of appeals applied the procedural bar of res judicata when it denied Smith relief. *See Coleman v. Mitchell*, 268 F.3d 417, 432 (6th Cir. 2001) ("res judicata under [Ohio's post-conviction statute] § 2953.21 is an adequate and independent state ground for barring habeas review of constitutional claims."). And second, Smith didn't appeal to the Ohio Supreme Court the Ohio court of appeals' judgment. *See O'Sullivan*, 526 U.S. at 845.

Smith has not shown cause or prejudice to excuse his procedural default. His assertion that the state "procedurally impeded appeals" is not supported by the record, which shows that Smith engaged in robust pro se motion practice in both of his underlying state court cases, including appeals, *see* Doc. 30-2, at 318–29; 330–37, and a contemporaneous civil rights case that Smith litigated pro se in another unit of this Court, *see Smith v. Pinkney, et al.*, Case No. 1:18-cv-163 (filed 1/22/2018).

---

[9]     *See* https://www.supremecourt.ohio.gov/clerk/ecms/#/search (last visited Aug. 23, 2023).

Finally, Smith hasn't shown that he suffered a fundamental miscarriage of justice such that his is "an extraordinary case, where a constitutional violation has probably resulted in [a guilty plea] of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see Bousley v. United States*, 523 U.S. 614, 623 (1998) (applying the *Murray v. Carrier* standard to a guilty plea). A claim of *actual innocence* requires the petitioner to show that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995) (internal quotation marks omitted)); *Keith v. Hill*, -- F.4th --, No. 21-3948, 2023 WL 5216175, at *7 (6th Cir. Aug. 15, 2023). The Supreme Court underscored that "the miscarriage of justice exception ... applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 394–95 (2013) (quoting *Schlup*, 513 U.S. at 329).

In his Petition, Smith cites "innocence evidence and police evidence of arson videos." Doc. 1, at 5. He references twelve exhibits that he attached to his Petition. *Id.* (citing Exhibits 3–14); Doc. 1-1, at 1, ¶3. Exhibits three through six aren't relevant because, as the Ohio court of appeals observed, "the documents ... concern a fire that occurred on September 5, 2016. It is undisputed that the fire, which formed the basis of the attempted aggravated arson charge to which Smith pled guilty in CR-17-620144-A occurred on April

14, 2017." *Smith*, 2023 WL 2029000, at *3; Docs. 1-3–1-6 (fire investigation records from a September 2016 fire).

The remaining documents are fire investigation records from the April 17, 2014 fire with Smith's added hand-written remarks. Exhibits seven and eight show that Arndt, the property owner, told the investigators that the garage, where the fire started, contained a riding lawn mower, propane tanks, and gasoline cans. Docs. 1-7, 1-8. Smith writes that the lawn mower was a "set up" for the gas cans, which, in turn, were used to set the fire. Doc. 1-8. He also states that the truck parked next to the garage, which caught fire from the garage and was noted to be "severely damaged," was "junk" and that it hadn't run for over four years. *Id*. But a lawn mower and gas cans are reasonable items to have in a garage, and the value of the truck isn't relevant to whether Smith committed attempted aggravated arson. So those exhibits don't show that "it is more likely than not that no reasonable juror would have convicted" Smith of attempted aggravated arson. *See McQuiggin*, 569 U.S. at 395.

Exhibits nine, ten, and eleven are police reports indicating that Arndt showed the detective two clear plastic gloves, which, Smith writes, were "planted by [Arndt] after [the] fire dep[artment] left." Docs. 1-9, 1-10, 1-11. Exhibit twelve is a copy of a black and white photograph showing the plastic gloves; Smith writes that the gloves are in "pristine condition" with "no gas residue [or] arson smoke on them." Doc. 1-12. The exhibits don't show that Arndt planted the gloves or what residue, if any, the gloves contained.

Smith highlights Arndt's statement that on the night of the fire, Arndt and his wife were sleeping and woke up when Arndt's wife heard the smoke alarms "going off." Doc. 1-7. Smith calls that a "lie" because, Smith asserts, the same record shows that a witness who called 911 "told [the Arndts that] the house was on fire." *Id*. Which, Smith says, shows that "[Arndt] set this fire." *Id*. Exhibit seven doesn't show that Arndt, and not Smith, set the fire.

Exhibit ten describes the video from the exterior of the Arndts' house that Arndt gave to the police. Doc. 1-10. The document describes the video as showing vehicle headlights "pull up"; "a figure" and "an image" moving between the backyard, driveway, and the garage; and "shadows" in the backyard. Doc. 1-10. Smith writes that "none show Darryl Smith." *Id*. Exhibit fourteen is a record allegedly showing that Arndt's house had a camera. Doc. 1-14. These documents don't help Smith. As I observed in a prior Order, if Arndt set the fire, as Smith alleges, Arndt wouldn't give the police a video showing himself setting the fire. Doc. 55, at 3.

Finally, Exhibit thirteen is a record showing that Smith tried to flee when officers arrested him on the evening of April 14, 2017. Doc. 1-13. Smith writes, "same date as arson fire" and highlights the fact that the record states that Smith had an active warrant from another case when the police arrested him. *Id*. It's not clear what importance Smith places on this document. If he thinks it shows that he was in jail on another charge when the fire was set, it doesn't. That's because the fire was set shortly before 2:00 a.m. on April 14,

Doc. 1-11, and Smith was arrested about 17 hours later at 7:00 p.m. on April 14, Doc. 1-13.

Considering all of Smith's cited exhibits and other evidence cited in the record, Smith hasn't shown that it's "more likely than not that no reasonable juror would have convicted [Smith]" for attempted aggravated arson. *See McQuiggin*, 569 U.S. at 395. Smith therefore hasn't shown actual innocence, and Ground one is procedurally defaulted.

> 2.   *A portion of Ground two is not cognizable and the remainder fails on the merits*

In Ground two, Smith argues that the trial court didn't comply with Ohio Criminal Rule 11, didn't inform Smith of the mandatory maximum penalties, and "reneged on [a] plea agreement" contrary to the due process clause. Doc. 1, at 7.

Smith's claim that the trial court failed to comply with Ohio Criminal Rule 11 is a state law claim that is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Rose v. Warden, Chillicothe Corr. Inst.*, No. 1:15-cv-353, 2018 WL 1425971, at *7 (S.D. Ohio Mar. 22, 2018) (claim that the trial court failed to follow Ohio Criminal Rule 11 when accepting a guilty plea is not cognizable on federal habeas review), *report and recommendation adopted*, No. 1:15-cv-353, 2018 WL 4566324 (S.D. Ohio Sept. 24, 2018).

The Ohio court of appeals considered Smith's claim that the trial court violated the Constitution and Ohio Criminal Rule 11:

> {¶12} In his second assigned error, Smith argues that the court violated Crim.R. 11 when accepting his guilty plea. We note that Smith's December 3, 2018 guilty plea is the only plea Smith appealed in this case. Smith did not appeal from his March 29, 2018 guilty plea, and that plea is not before us for review.

> {¶13} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 600 N.E.2d 450 (1996).

>> To ensure that a plea to a felony charge is knowingly, intelligently, and voluntarily entered into, a trial court must follow the dictates of Crim.R. 11(C)(2). This provision provides that the court must address defendants personally and (1) determine that they understand the nature of the charges against them and of the maximum penalty involved, (2) inform them of and determine that they understand the effect of a plea of guilty or no contest and that the court may proceed with judgment and sentence, and (3) inform them of and determine that they understand the constitutional rights that they are giving up by entering into their plea. Crim.R. 11(C)(2)(a)-(c).

> *State v. Gunter*, 8th Dist. Cuyahoga No. 105275, 2017-Ohio-7247, ¶ 19.

24

{¶14} Courts must substantially comply with the nonconstitutional notifications and determinations required by Crim.R. 11(C)(2)(a) and (b). *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 14-17. Furthermore, "a defendant must show prejudice before a plea will be vacated for a trial court's error involving Crim.R. 11(C) procedure when nonconstitutional aspects of the colloquy are at issue." *Id*. at ¶ 17.

{¶15} Turning to the constitutional rights within Crim.R. 11(C)(2)(c), "strict, or literal, compliance" is required by courts accepting a guilty plea. *Id*. at ¶ 18. "However, failure to [literally comply] will not necessarily invalidate a plea. The underlying purpose, from the defendant's perspective, of Crim.R. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty." *State v. Ballard*, 66 Ohio St.2d 473, 479–480, 423 N.E.2d 115 (1981).

{¶16} This court conducts a de novo review to determine whether the trial court accepted a plea in compliance with Crim.R. 11(C). *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). "We are required to review the totality of the circumstances and determine whether the plea hearing was in compliance with Crim.R. 11(C)." *State v. Schmick*, 8th Dist. Cuyahoga No. 95210, 2011-Ohio-2263, ¶ 6.

{¶17} Smith argues that the trial court failed to consider his disabilities when accepting his plea. Smith lists his disabilities as follows: "severe hearing impaired"; "severely vision impaired permanently"; and "severe permanent concussion disorders of P.C.S. and C.T.E." According to Smith, these "disability injury afflictions" are the "direct intentional result of senseless multiple savage beatings during arrest * * * by 2 deputy sheriffs and jail guards in the notorious Cuyahoga County Jail."

{¶18} Although somewhat unclear from his pro se appellate brief, Smith also appears to argue that his plea must be vacated because his resulting prison sentence was too harsh. For example, Smith argues that "no brain dead idiot would stupidly make a 'plea agreement' to a maximum[1] consecutive 8 ½ years sentence at age 67 that is an effective real actual death sentence."

> [FN]1  Neither Smith's six-year sentence nor his 30-month sentence is the maximum prison sentence allowed under R.C. 2929.14 for second- and third-degree felonies, respectively.

{¶19} Upon review of the December 3, 2018 plea hearing, we find that the court advised Smith that he would be pleading guilty to "failure to comply with an order or a signal of a police officer pursuant to Revised Code Section 2921.331(B)." The court informed Smith that this offense was a third-degree felony "punishable by a possible prison term of from 9 to 12, 18, 24, 30, to 36 months in prison * * *." The court reviewed with Smith all of the constitutional rights he was waiving by pleading guilty.

{¶20} The court paid special attention to Smith's hearing impairment by having the attorneys speak louder and stand closer to Smith and repeating things so Smith understood them. The court also reminded Smith that his guilty plea was a violation of his community control sanctions. We find no constitutional or nonconstitutional violations of Smith's Crim.R. 11 rights. Furthermore, Smith failed to show any prejudice resulting from allegations that his rights were violated. Accordingly, Smith's second assigned error is overruled.

*Smith*, No. 108121, 2020 WL 1890729, at *3.

Smith doesn't explain how the Ohio court of appeals' decision was contrary to or an unreasonable application of United States Supreme Court

precedent or show that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d). The transcript supports the Ohio court of appeal's finding that the trial court advised Smith of the maximum penalty for the charge he pleaded guilty to and the mandatory term of post-release control. Doc. 30-3, at 58. Smith responded that he understood. *Id*. The trial court advised Smith that pleading guilty would be a probation violation in his arson case. *Id*. at 56–57. The court explained that it could sentence Smith on the arson case and the failure-to-stop case "and run [the sentences] one after another." *Id*. at 57. Smith stated that he understood. *Id*. And Smith hasn't shown that the court "induced his guilty plea with promised phony plea agreements (the court reneged on)." Doc. 1, at 7. At the plea hearing, Smith stated that he had not been "promised anything … in order to get [him] to plead here today." Doc. 30-3, at 57.

Smith's claim that the trial court's acceptance of his guilty plea was unconstitutional fails on the merit.

### 3.    *Ground three fails on the merits*

In Ground three, Smith argues that the trial court violated the due process clause when it "arbitrarily revoked probation, denied all of [Smith's] revocation procedure rights and falsified records and journal entries to deny [Smith] a revocation hearing." Doc. 1, at 8. Smith alleges that the court didn't

appoint him counsel, issue "any infraction charges," and that "no hearing was conducted and the judge falsified court records." *Id*.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits any state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. Probationers, while on probation, "have an obvious interest in retaining their conditional liberty." *Black v. Romano*, 471 U.S. 606, 611 (1985). Accordingly, "[t]he Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Id*. at 610. The Supreme Court has found that a probationer facing revocation must receive, at a minimum:

> (a) written notice of the claimed violations of [probation]; (b) disclosure to the [probationer] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation].

*Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)); *see also Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774 (6th Cir. 2008).

The Ohio court of appeals considered this claim as follows:

28

{¶5} In his first assigned error, Smith argues that the court failed to hold a "probation violation procedural hearing," appoint counsel to represent him, serve him with "violation infractions," and generally denied him his due process.

{¶6} At Smith's plea hearing on December 3, 2018, he was represented by an attorney. The court asked Smith the following: "This plea is going to be a violation of your probation, do you understand?" Smith responded, "Very well." The court continued:

> We'll have—at the time of sentencing we'll have a hearing with your probation officer * * * to see what we're going to do. I could do a number of things. I could sentence you on the new case, sentence you on the old case, I could run the sentences together, I could run them one after another, or I could put you on probation in this case and keep you on probation in the other case.

{¶7} The court again asked Smith if he understood, to which Smith replied, "Yes, ma'am." Smith then pled guilty to failure to comply.

{¶8} At the January 7, 2019 sentencing and community control sanctions violation hearing, Smith was again represented by the same attorney. The court found that Smith "has basically a 45-year prior criminal history dating back to the year 1974." The court found Smith to be a community control sanctions[] violator in CR-17-620144 and imposed "a term of incarceration of six years and in this case today, 630341, a term of incarceration of 30 months." The court ordered this time to be served consecutively.

{¶9} Pursuant to Crim.R. 32.3(A), "[t]he court shall not impose a prison term for violation of the conditions of a community control sanction * * * except after a hearing at which the defendant shall

be present and apprised of the grounds on which the action is proposed." A community control sanctions violation hearing is not akin to a criminal prosecution. Nevertheless, a defendant is entitled to the minimum due process protections, which include:

> (a) written notice of the claimed violations * * *; (b) disclosure * * * of evidence against [the defendant]; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses * * * ; (e) a "neutral and detached" hearing * * * ; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [community control sanctions].

*Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

{¶10} "A trial court's decision finding a violation of community control [sanctions] will not be disturbed on appeal absent an abuse of discretion." *State v. Hayes*, 8th Dist. Cuyahoga No. 87642, 2006-Ohio-5924, ¶ 11.

{¶11} Upon review of the record, we find that the court held community control sanctions violation hearings on December 3, 2018 and January 7, 2019; Smith was present and represented by counsel at these hearings; Smith was properly notified of the charges against him; Smith acknowledged on the record that his guilty plea to failure to comply necessarily resulted in a violation of his community control sanctions; and the court made a finding that Smith violated his community control sanctions. Accordingly, we find that Smith suffered no due process deprivation regarding his community control sanctions violation, and his first assigned error is overruled.

30

*Smith*, No. 108121, 2020 WL 1890729, at *2.

Smith hasn't shown that the Ohio court of appeals' decision was contrary to or an unreasonable application of United States Supreme Court precedent or show that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d). As for the *written notice* requirement, Smith was notified by an indictment in the failure-to-stop case in July 2018 that he was charged with failing to comply. Doc. 30-1, at 16. Smith understood that his indictment on that charge violated his probation—indeed, in August 2018, Smith filed in the arson case a motion to dismiss the failure-to-comply charge in the failure-to-stop case because it would be a probation violation. *See* Doc. 30-1, at 20–22. And at the December 2018 hearing, Smith confirmed that his guilty plea for failure to comply was a probation violation and stated that he understood the resulting sentencing implications. Doc. 30-3, at 56–57; *see also id*. at 42–43 (October 2018 hearing). So even if Smith didn't receive *written notice* of the claimed violation, Smith had actual notice of the violation and the Ohio court of appeals' decision was not an unreasonable application of the procedural safeguards announced in *Gagnon* and *Morrissey*. *See Jenkins v. Morgan*, 28 F. Supp. 3d 270, 277–79 (D. Del. 2014) (state supreme court did not unreasonably apply United States Supreme Court precedent when it found that the petitioner's due process rights were satisfied when he had actual notice, rather than written notice, of the charges against him). And Smith doesn't explain

how he was prejudiced by the lack of written notice. *See D'Amato v. U.S. Parole Comm'n*, 837 F.2d 72, 77 (2d Cir. 1988) ("failure to provide written notice, by itself, is insufficient to justify habeas relief; appellants must demonstrate that they were prejudiced by the claimed infringement of their procedural rights"); *see also Mapouya v. Gonzales*, 487 F.3d 396, 416 (6th Cir. 2007) ("To prevail on a due process claim, a petitioner must demonstrate actual prejudice, and that the alleged prejudice materially affected the outcome of his or her case.").

Moreover, the court held hearings addressing Smith's probation violation and Smith was represented by counsel at the hearings. Doc. 30-3, at 50, 61. Smith delivered a lengthy presentation to the court, *id*. at 63–89, and counsel made further argument in Smith's favor, *id*., at 91–92. The trial court, relying on the presentence report prepared for Smith in both cases and citing Smith's 45-year criminal history, found that Smith was a probation violator in the arson case and sentenced him accordingly. *Id*. at 92–93.

Smith alleges that "the judge falsified court records" because the trial court's journal entry listed the wrong attorney. Doc. 1, at 8; Doc. 30-1, at 25. But the court corrected its error, as Smith concedes. *See* Doc. 1-37. Smith appears to assert that because his probation revocation hearing in the arson case occurred at the same time as his guilty plea and sentencing hearings in the failure-to-stop case, that he didn't have a hearing or appointed counsel on his probation violation in the arson case. Doc. 1, at 8, Doc. 1-33, at 10. But the Ohio court of appeals found that Smith nevertheless had a hearing, was

represented by counsel, was properly notified of the charge against him, pleaded guilty to failure to comply, and acknowledged that his guilty plea to failure to comply resulted in a community control sanctions violation in the arson case. *Smith*, 2020 WL 1890729, at *2. Also, Smith delivered a lengthy presentation to the court. Doc. 30-3, at 63–89. The Ohio court of appeals' conclusion that Smith "suffered no due process deprivation regarding his community control sanctions violation," *Smith*, 2020 WL 1890729, at *2, was not an unreasonable application of United States Supreme Court precedent. Ground three fails on the merits.

### Conclusion

For the reasons set forth above, I recommend that Smith's Petition be denied.

Dated: August 23, 2023

　　　　　　　　　　　　　　　 */s/ James E. Grimes Jr.*　　　　　
　　　　　　　　　　　　　　　 James E. Grimes Jr.
　　　　　　　　　　　　　　　 U.S. Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).